```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION
```

**TRAFFIC JAM EVENTS, LLC**                                **PLAINTIFF**

**VS.**                               **CIVIL ACTION NO. 5:13-cv-288-WHB-RHW**

**WHITE AND SONS, INC.**                                    **DEFENDANT**

## OPINION AND ORDER

This cause is before the Court on the Motion of Defendant for Summary Judgment. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds the Motion is well taken and should be granted.[1]

### I.  Factual Background and Procedural History

Traffic Jam Events, LLC, ("Traffic Jam"), is a business that promotes and assists in staffed sales events at automobile dealerships. White and Sons, Inc., d/b/a Keith White Ford Lincoln ("White and Sons") owns an automobile dealership in McComb, Mississippi. Traffic Jam conducted several staffed sales events at the White and Sons dealership including one that ended on August 4, 2012.

On August 6, 2012, Keith White ("White"), who is the President of White and Sons, met with David Hillyard ("Hillyard"), an

---

[1] Defendant also filed a motion seeking dismissal under Rule 37 of the Federal Rules of Civil Procedure based on the failure of the Plaintiff to have its Rule 30(b)(6) witness appear at a properly noticed deposition. Having concluded that summary judgment should be granted, the Motion to Dismiss will be denied as moot.

independent contractor who was employed by Traffic Jam, for the purpose of "settling-up" after the recently-concluded sales event. In addition to discussing matters associated with the sales event and dividing the proceeds generated therefrom, White and Hillyard discussed the possibility of conducting another sales event at the end of November.  White and Hillyard aver that no agreement was reached between White and Sons and Traffic Jam with respect to the November sales event.  White did, however, sign a draft copy of a Client Agreement he was given by Hillyard after placing several hand-written notations and question marks on it.  According to White, the hand-written notations referred to "areas of the draft document which would have to be discussed and agreed upon" later. Although no further discussions or negotiations were conducted by the parties, the draft Client Agreement was later signed by David Jeansonne ("Jeansonne"), President of Traffic Jam.  Sometime thereafter, White and Sons advised Traffic Jam that it was not going to conduct a sales event in November.

Traffic Jam filed a complaint against White and Sons, which was amended in June of 2013.[2]  In the Amended Complaint, Traffic Jam alleges that it had entered a contract, dated August 4, 2012, with White and Sons for the purpose of conducting a sales event beginning on November 28, 2012.  See Am. Compl. [Docket No. 15], ¶

---

[2]  The pleadings show that Traffic Jam is considered a citizen of Louisiana, White and Sons is considered a citizen of Mississippi, and Traffic Jam seeks damages totaling over $240,000.  Accordingly, the Court may properly exercise federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

8.   Traffic Jam further alleges that White and Sons breached the subject contract/acted in bad faith by cancelling the November 2012 special sales event.  Based on the alleged breach/bad faith, Traffic Jam seeks compensatory damages in the amount of $30,000 for upfront advertising costs as specified in the subject contract.  See id. at ¶¶ 17-21 (referencing ¶ 3A of the August 4, 2012 contract).[3]  Traffic Jam also seeks damages in the amount of $210,000 on allegations that White and Sons breached the following provision in the subject Contract by employing three people who were formally employed and/or affiliated with Traffic Jam:

> [White and Sons] will make no offer or attempt to retain or employ any person, firm, or entity employed by, contracted by, or formally employed by or affiliated with Traffic Jam during the term of this Agreement and for a period of 120 days after termination of this agreement.  If [White and Sons] should break this contractual agreement, [White and Sons] shall pay a fine of $70,000 (seventy thousand dollars) to Traffic Jam.

Id. at ¶¶ 23-28 (referencing ¶ 4A of the subject Contract).  White and Sons has now moved for summary judgment on the claims alleged against it in the Amended Complaint.

**II.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[3]   A copy of the August 4, 2012, Client Agreement is attached as an exhibit to the Amended Complaint.

3

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Discussion

In this civil action, Traffic Jam seeks compensatory and punitive damages on claims that White and Sons breached the August of 2012 Client Agreement and/or acted in bad faith with respect to that agreement. Under Mississippi law, "[t]he elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily." <u>Favre Prop. Mgmt., LLC v. Cinque Bambini</u>, 863 So.2d 1037, 1044 (Miss. Ct. App. 2004) (citing <u>Warwick v. Matheney</u>, 603 So.2d 330, 336 (Miss. 1992)). A finding of bad faith requires the additional showing of "some conduct which violates standards of decency, fairness or reasonableness." <u>Cenac v. Murry</u>, 609 So.2d 1257, 1272 (Miss. 1992).

In moving for summary judgment on the contract-related claims,

5

White and Sons argues that the Client Agreement pertaining to the November 2012 sales event was not valid and, therefore, not binding on the parties. Under Mississippi law, for a contract to be valid, there must be: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." <u>GGNSC Batesville, LLC v. Johnson</u>, 109 So.3d 562,565 (Miss. 2013). Here, White and Sons argues that there was no mutual assent because no agreement had been reached between it and Traffic Jam either before the subject contract was signed by White on behalf of White and Sons, or signed by Jeansonne on behalf of Traffic Jam.

In support of its argument that mutual assent was lacking, White and Sons has submitted an Affidavit from White in which he avers that he met with Hillyard "who was a representative of Traffic Jam" on August 6, 2012, to discuss the recently concluded sale event and to "tie[] up any loose ends that may be necessary." <u>See</u> Mot. for Sum. J. [Docket No. 36], Ex. 1. White also avers that he and Hillyard discussed:

> [C]onducting another sale in November, 2012 and discussed certain aspects of the sale but did not come to an agreement. David Hillyard provided me with a draft contract which I reviewed and made several corrections and indicated other areas of the draft document which would have to be discussed and agreed upon prior to a sale being conducted. The issues to be specifically addressed concerned the number of days that the sale would last, the advertising budget for the proposed sale, the percentages to be paid to Traffic Jam Events, LLC, the methods of calculating the profit from the sale, what costs were to be included, etc.... David Hillyard understood that no agreement had been reached to conduct

6

  a sale in November, 2012.

See Mot. for Sum. J. [Docket No. 36], Ex. 1. White and Sons also submitted an Affidavit from Hillyard in which he avers that he was an independent contractor for Traffic Jam, and that he met with White "to finalize any loose ends" from the staffed sales event that had concluded on August 4th. Hillyard also avers:

> On Monday, August 6, 2012 I met with Keith White and after we had concluded any business that remained to be addressed from the sale the previous week, I discussed with him the possibility of doing a sale at his dealership in November, 2012. We went over a form contract that I provided to him and we discussed several aspects of the sale.. Keith made notations on the document that I presented to him, indicating some things that he would require to be changed before reaching an agreement, and indicating other areas such as the advertising budget which would have to be negotiated. Keith did sign the document though both of us understood that the document was not finalized, that no agreement had been reached between Traffic Jam Events, LLC on the part of Traffic Jam Event, LLC and the dealership on his part, to conduct a staffed event sale at the dealership in November. Both of us understood that additional terms and conditions of the agreement would have to be worked out prior to an agreement being consummated.

Id. at Ex. 2.

  In response, Traffic Jam has submitted an affidavit from Jeansonne who avers that White signed the subject Client Agreement, "including his handwritten notations therein", on August 4, 2012. See Resp. [Docket No. 38], Ex. 1 at ¶ 6. Jeansonne further avers that he signed the Client Agreement on August 6, 2012, and that he had not spoken with White before he signed that Agreement. Id. at ¶¶ 7, 9. Traffic Jam argues that, by virtue of Jeansonne's signature, it had accepted/assented to the notations made by White and, therefore, there was a meeting of the minds with respect to

the Client Agreement.  Traffic Jam, however, has not presented any evidence that the notations made by White were counter-proposals to which White and Sons agreed to be bound.  Instead, according to White's and Hillyard's affidavits, the hand-written notations were meant to identify areas that either needed to be amended or needed further discussion/negotiation before an agreement could be reached by the parties.

Additionally, the Mississippi Supreme Court has explained that "[t]he question as to whether those who have signed [a contract] are bound [to its terms] is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument."  Byrd v. Simmons, 5 So.3d 384, 389 (Miss. 2009)(Turney v. Marion Cnty. Bd. of Educ., 481 So.2d 770, 774 (Miss. 1985)).  Here, the affidavits of White, who was acting on behalf of White and Sons, and Hillyard, who was working on behalf of Traffic Jam, at the time White signed the Client Agreement clearly demonstrate that the parties understood that no agreement had been reached by them with respect to conducting a staffed sales event in November of 2012 at the time the Agreement was signed by White.  Finally, there is no dispute that the amount of the advertising budget had not been decided by the parties at the time that either White or Jeansonne signed the subject Client Agreement.  As the amount of the advertising budget would be a material term of the contract, and as this term had not been agreed upon by the parties, a contract could not have been formed.  See e.g. Hunt v. Coker, 741 So.2d 1011, 1015 (Miss. Ct. App.,

1999)(finding that the agreement between the parties failed "to form a contract because the material terms [were] vague and indefinite.").

In sum, while Traffic Jam may have assented to the hand-written notations on the subject Client Agreement, it has not presented any evidence to show that the hand-written notations were intended to be counter-proposals or that White and Sons agreed to/assented to be bound by those notations or any other terms contained in the Agreement. In addition, Traffic Jam has failed to show that the subject Client Agreement contained definite material terms. As Traffic Jam has not presented any evidence that White and Sons agreed to or assented to the terms of the Client Agreement pertaining to the November 2012 sales event, and has not shown that the material terms of that Agreement are definite in nature, the Court finds it has failed to show that there exists a genuine issue of material fact with respect to whether that Agreement would be valid under Mississippi law. As there has been no showing of a valid contract, or a fact issue as to the existence of a valid contract, the Court finds the breach of contract/bad faith claims alleged by Traffic Jam fail as a matter of law. The Motion for Summary Judgment as to those claims will, therefore, be granted.

### IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant for Summary Judgment [Docket No. 35] is hereby granted. A Final

Judgment dismissing this case with prejudice shall be entered this day.

IT IS FURTHER ORDERED that the Motion of Defendant to Dismiss [Docket No. 33] is hereby denied as moot.

SO ORDERED this the 20th day of June, 2014.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE
